STATE OF NEW MEXICO
COUNTY OF SANDOVAL
THIRTEENTH JUDICIAL DISTRICT COURT

No. _____ D1329 CV 09-322

CHASE HOME FINANCE LLC,

   Plaintiff,

vs.

WAYLAND L. DAVIS, LISA MERRY FINLEY, AND
UNKNOWN TENANT (REAL NAME UNKNOWN),

   Defendants.

## COMPLAINT FOR FORECLOSURE

COMES NOW the Plaintiff, Chase Home Finance LLC, by and through its attorneys, Little & Dranttel, P.C. (Cody R. Lujan), and for its cause of action states:

 1. This Court has proper jurisdiction over these proceedings pursuant to Article VI, Section 13, of the New Mexico Constitution. This Court has proper venue pursuant to NMSA 1978, Section 38-3-1 (2003).

 2. Plaintiff is doing business in the State of New Mexico.

 3. Defendants, Wayland L. Davis, Lisa Merry Finley, and Unknown Tenant (Real Name Unknown), are, upon information and belief, residents of Sandoval County, New Mexico.

 4. The real property that is the subject matter of this action is located in Sandoval County, New Mexico.

 5. On March 28, 1997, Defendants, Wayland L. Davis and Lisa Merry Finley, executed and delivered to Home Trust Company, a Note in the principal sum of $214,600.00, bearing interest at the rate of 7.7500% per annum (hereinafter the "Note"). A true and correct copy of the Note is attached hereto and incorporated herein as Exhibit "A".

6. On March 28, 1997, as security for repayment of the debt evidenced by the Note, Defendants, Wayland L. Davis and Lisa Merry Finley, executed a Mortgage in favor of Home Trust Company that was filed for record in Sandoval County, New Mexico, on March 31, 1997, in Book 400, at Pages 26791-26796, as Document No. 6396, and re-recorded on June 4, 1997, in Book 400, at Pages 40599-40604, as Document No. 11635. A true and correct copy of said re-recorded Mortgage is attached hereto and incorporated herein as Exhibit "B".

7. The Note and Mortgage were assigned to Chase Manhattan Mortgage Corporation, by Assignment of Mortgage dated March 28, 1997, and being recorded on June 30, 1997, in Book 400, Page 45842, of the records of Sandoval County, New Mexico. Plaintiff is the holder of the Note and Mortgage as successor by merger to Chase Manhattan Mortgage Corporation.

8. According to the terms of the Mortgage, Defendants, Wayland L. Davis and Lisa Merry Finley, mortgaged, granted and conveyed to the mortgagee the following property located in Sandoval County (hereinafter the "Property"):

> LOT 26 OF CORRALES SUBDIVISION WHICH SUBDIVISION PLAT WAS FILED IN THE OFFICE OF THE COUNTY CLERK OF SANDOVAL COUNTY ON OCTOBER 4, 1994 AT 10:15 A.M. AND RECORDED IN VOLUME 3, PAGE 1169-A OFFICE OF THE COUNTY CLERK OF SANDOVAL COUNTY, NEW MEXICO. THE PLAT WAS AMENDED AND RE-RECORDED FEBRUARY 15, 1995 BOOK 3, PAGE 1215-B AND FURTHER CORRECTED AND RE-RECORDED ON JULY 12, 1995 BOOK 3, PAGE 1279-B OFFICE OF THE COUNTY CLERK, SANDOVAL COUNTY, NEW MEXICO,

including any improvements, fixtures, and attachments, such as, but not limited to, mobile homes. The property is generally described with the street address of 121 Doolittle Lane,

Corrales, New Mexico 87048. If there is a conflict between the legal description and the street address, the legal description shall control.

9. The Defendants, Wayland L. Davis and Lisa Merry Finley, are in default on said Note and, despite demand, have failed to cure the default. Plaintiff therefore exercised its option to accelerate the outstanding balance of the Note and all other amounts due and owing on the Note as of the date of default and to foreclose the Mortgage.

10. Said Note and Mortgage further provide for reasonable attorney's fees should said Note be turned over to an attorney for collection. It has become necessary for the Plaintiff to retain the undersigned attorneys to proceed with the collection of the Note and foreclosure of the Mortgage.

11. Plaintiff is entitled to the appointment of a Receiver by the Court pursuant to N.M.S.A. 56-9-4 (1978).

12. The Plaintiff's Mortgage and Note documents should be foreclosed in the manner prescribed by law in order to satisfy the indebtedness owed by the Defendants, Wayland L. Davis and Lisa Merry Finley, and that said judgment should provide for the immediate sale of said premises permitting the Plaintiff to bid in the amount of its indebtedness, in an amount to be determined by this Court for all remaining unpaid principal, interest, court costs, attorney's fees, and other charges as may be determined.

13. Upon information and belief, one or more individuals claim or may claim possessory or tenancy interests in the property subject to this action. Such parties have been made Defendants in this cause under the name and style as follows: Unknown Tenant (Real Name Unknown). All interests of said Defendant are subordinate and inferior to that of Plaintiff, and should be foreclosed herein.

14. To the extent that any claim of interest or lien of any Defendants or other party is determined by the Court to be valid, all of such claims are inferior and subordinate to the lien of the Mortgage in favor of Plaintiff, and Plaintiff is entitled to have the lien of its Mortgage determined to be a first and prior lien upon the property, superior to the rights of the Defendants, Wayland L. Davis and Lisa Merry Finley, joinder and all of the Defendants and interveners who may hereafter be joined.

15. In the event that the Court determines that any valid prior mortgage upon said premises exists, the Plaintiff requests that the Court enter an Order foreclosing the interest of any said Mortgage upon payment of its Mortgage Note, or in the alternative, to allow foreclosure of the Plaintiff's Mortgage on said premises, subject to any prior lien.

16. The Plaintiff has been required to employ counsel to obtain real estate searches and reports on the premises and has incurred abstracting expenses and costs in this proceeding, all of which are additional indebtedness secured by said Mortgage.

17. As of February 11, 2009, the Principal Balance due is $210,472.26, plus interest accruing on said amount at the rate of 7.7500% per annum from and including July 1, 2008, through and including February 11, 2009, in the amount of $10,099.94, and thereafter accruing at the rate of 7.7500% per annum, plus estimated escrow advances through February 11, 2009, in the amount of $92.18, plus estimated late charges through February 11, 2009, in the amount of $1,799.58, plus other fees through February 11, 2009, in the amount of $1,015.50, for a total of $223,479.46, plus all attorney fees and other costs accrued.

WHEREFORE, the Plaintiff prays judgment as follows:

A. The Plaintiff have a judgment against the Defendants, Wayland L. Davis and Lisa Merry Finley, as set forth above including the principal amount due plus interest at the rate of

7.7500% per annum until all of said principal and interest be paid, plus such additional sums and amounts as may have been expended by the Plaintiff in payment for taxes and insurance, if any, other costs and expenses which the Plaintiff has been required to pay concerning these proceedings, plus an amount to be ascertained by the Court for reasonable attorney's fees, plus an amount sufficient to pay all costs of collection in accordance with the provisions of said Note and Mortgage through foreclosure sale date.

B.  The lien of the Mortgage of the Plaintiff and all other liens and interests be foreclosed and the real property securing the same be sold according to law and practice of this Court to pay the first mortgage lien held by the Plaintiff, the proceeds thereof to be applied to payment of the amount due to the Plaintiff as set forth above and that the said lien of the Mortgage of the Plaintiff be declared prior and paramount to all Defendants, and anyone claiming subsequent to said Mortgage, and all persons claiming under or through all Defendants, and all other persons bound by these proceedings be barred and foreclosed of all right, title and interest to said real property, if appropriate for deficiency judgment against Wayland L. Davis and Lisa Merry Finley, upon the sale of the premises that any excess over and above the amounts due to said Plaintiff be paid in accordance with the further orders of this Court.

C.  That a Receiver be appointed by the Court to take possession and control of the premises described in the Mortgage and to collect and receive any rents, issues and profits thereof during the foreclosure proceedings and to apply said proceeds to payment of the costs incurred by the Receiver and to apply any remaining proceeds as may be directed by the Court, principally to pay the Note from the Defendants, Wayland L. Davis and Lisa Merry Finley, to the Plaintiff.

D. To appoint a Special Master upon entry of judgment of Foreclosure to effect sale of the premises in accordance with the orders of this Court and applicable New Mexico law.

E. For an order that the Plaintiff or other parties to this action may become purchasers at sale; that the Special Master to be appointed execute a deed to the purchaser; and that the purchaser be let in possession of the premises on production of the Special Master's Deed thereto.

F. For the entry of an Order of Forcible Entry and Detainer directing that the Plaintiff be allowed immediate entry and possession of said premises; that the Court issue a Writ of Assistance if necessary to enable the purchaser under the sale to take possession of the property.

G. To foreclose the interests acquired subsequent to the Plaintiff's interest of any of the other Defendants in said real estate.

H. That the Plaintiff have a judgment as set forth herein, for all attorney's fees, costs, interest, and other charges expended in this proceeding, for such other and further relief as the Court deems just and proper.

LITTLE & DRANTTEL, P.C.

By _____
CODY R. LUJAN
Attorneys for Plaintiff
7430 Washington Street, NE
Albuquerque, NM 87109
Telephone: (505) 833-3036
Facsimile: (505) 833-3040
E-mail: complaint@littledranttel.com

# NOTE

MARCH 28,      1997          CORRALES          ,     NEW MEXICO
[Date]                        [City]                  [State]

121 DOOLITTLE LANE, CORRALES, NM 87048
(Property Address)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 214600.00     (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is   HOME TRUST COMPANY

. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of     7.750   %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the   1ST    day of each month beginning on   MAY 01, 1997. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on APRIL 01,           2027    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at    5353 W. ALABAMA, SUITE 500
                                       HOUSTON, TX  77056
                or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1537.42

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   fifteen    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

MULTISTATE FIXED RATE NOTE - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT                Form 3200 12/83
 -5A (9410)                                                                                Amended 5/91
                            Page 1 of 2
                   VMP MORTGAGE FORMS - (800)521-7291                            Initials: _____

EXHIBIT "A"

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
WAYLAND L. DAVIS                 -Borrower
SSN:

_____ (Seal)
LISA MERRY FINLEY                -Borrower
SSN:

_____ (Seal)
                                 -Borrower
SSN:

_____ (Seal)
                                 -Borrower
SSN:

(Sign Original Only)

Pay To The Order OF
CHASE MANHATTAN MORTGAGE CORPORATION
Without Recourse
HOME TRUST COMPANY

Residential Mortgage Services of Texas, Inc.
Attorney-In-Fact
Lou Ann Hartman, Vice President

Pay to the Order of
Without Recourse
Chase Manhattan Mortgage Corporation
BY
DONNA JONES/ASST. SECRETARY

-5A (0410)                Page 2 of 2                Form 3200 12/83

Fidelity Natioan1 Title GF#S2612JKC

RETURN TO:
HOME TRUST COMPANY
6743 ACADEMY ROAD NE STE B
ALBUQUERQUE, NM 87109

LOAN NUMBER: 0468022

STATE OF NEW MEXICO } SS
COUNTY OF SANDOVAL
This instrument was filed for record at
__3:73__ A.M. P.M on
MAR 31 1997
Recorded in Vol. 400
of records of said county, folio 26791-26796
By: _____ Clk & Recorder
Deputy

11635

~~6396~~

[Space Above This Line For Recording Data]

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on   MARCH 28, 1997
WAYLAND L. DAVIS AND LISA MERRY FINLEY, HUSBAND AND WIFE



STATE OF NEW MEXICO } SS
COUNTY OF SANDOVAL
This instrument was filed for record at
_____ A.M. P.M on
305
JUN: 4 1997
Recorded in Vol. 400
of records of said county, folio 40599-40604
By: _____ Clk Recorder
Deputy

("Borrower"). This Security Instrument is given to
HOME TRUST COMPANY

which is organized and existing under the laws of THE STATE OF TEXAS                    , and whose
address is 5353 W. ALABAMA, SUITE 500 HOUSTON, TX 77056
                                          ("Lender"). Borrower owes Lender the principal sum of
TWO HUNDRED FOURTEEN THOUSAND SIX HUNDRED AND 00/100
                                                  Dollars (U.S. $ 214600.00         ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on APRIL 01, 2027         . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in
                                          SANDOVAL                      County, New Mexico:
LOT 26 OF CORRALES SUBDIVISION WHICH SUBDIVISION PLAT WAS FILED IN THE OFFICE
OF THE COUNTY CLERK OF SANDOVAL COUNTY ON OCTOBER 4, 1994 AT 10:15 A.M. AND
RECORDED IN VOLUME 3, PAGE 1169-A OFFICE OF THE COUNTY CLERK OF SANDOVAL
COUNTY, NEW MEXICO. THE PLAT WAS AMENDED AND RE-RECORDED FEBRUARY 15, 1995
BOOK 3, PAGE 1215-B AND FURTHER CORRECTED AND RE-RECORDED ON JULY 12, 1995
BOOK 3, PAGE 1279-B OFFICE OF THE COUNTY CLERK, SANDOVAL COUNTY, NEW MEXICO.

**THIS DOCUMENT IS BEING RERECORDED TO SHOWN ACKNOWLEDGEMENT DATE.            40599

which has the address of  121 DOOLITTLE LANE                         CORRALES     [Street, City],
New Mexico              87048          [Zip Code]  ("Property Address");
NEW MEXICO- Single Family - FNMA/FHLMC
UNIFORM INSTRUMENT
VMP-6R(NM) (9407)             Form 3032 9/90
                              Amended 5/91
      VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 6                 Initials: ___

~~26791~~



EXHIBIT
"B"

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

40600

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve

payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

22. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

23. **Redemption Period.** If this Security Instrument is foreclosed, the redemption period after judicial sale shall be one month.

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Adjustable Rate Rider      ☐ Condominium Rider              ☐ 1-4 Family Rider
☐ Graduated Payment Rider   ☐ Planned Unit Development Rider  ☐ Biweekly Payment Rider
☐ Balloon Rider              ☐ Rate Improvement Rider         ☐ Second Home Rider
☐ V.A. Rider                 ☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____       _____(Seal)
                                         WAYLAND L. DAVIS              -Borrower

_____       _____(Seal)
                                         LISA MERRY FINLEY             -Borrower

_____(Seal)  _____(Seal)
                         -Borrower                                      -Borrower

STATE OF NEW MEXICO,   SANDOVAL                      County ss:

This instrument was acknowledged before me on   March 28, 1997
by WAYLAND L. DAVIS AND LISA MERRY FINLEY, HUSBAND AND WIFE   (date)
                    (person acknowledging)

My Commission Expires: 2-28-97

                                Notary Public  Joyce K. Chavarria

                                                            ~~26796~~

@D-6R(NM) (9407)              Page 6 of 6           40604        Form 3032 9/90

Return to:
~~HOME TRUST COMPANY~~
~~5620 WYOMING BLVD. NE~~
~~ALBUQUERQUE, NM 87109~~
LOAN NUMBER: 0468022

Return to
ALBERT E. BUTLER
ATTORNEY AT LAW
5353 W. ALABAMA #515
HOUSTON, TX 77056

13553

## ASSIGNMENT OF MORTGAGE

THE STATE OF NEW MEXICO
COUNTY OF SANDOVAL

KNOW ALL MEN BY THESE PRESENTS

That HOME TRUST COMPANY the present legal and equitable owner and holder of that one certain promissory note in the original principal sum of TWO HUNDRED FOURTEEN THOUSAND SIX HUNDRED AND 00/100 Dollars $ 214600.00 dated MARCH 28, 1997 executed by WAYLAND L. DAVIS AND LISA MERRY FINLEY, HUSBAND AND WIFE payable to the order of HOME TRUST COMPANY more fully described in a MORTGAGE, recorded in the Official Real Property Records of SANDOVAL County, NEW MEXICO, under 6396 and Refiled under 11635 said note being secured by said MORTGAGE lien against the following described property, to-wit: LOT 26 OF CORRALES SUBDIVISION WHICH SUBDIVISION PLAT WAS FILED IN THE OFFICE OF THE COUNTY CLERK OF SANDOVAL COUNTY ON OCTOBER 4, 1994 AT 10:15 A.M. AND RECORDED IN VOLUME 3, PAGE 1169-A OFFICE OF THE COUNTY CLERK OF SANDOVAL COUNTY, NEW MEXICO. THE PLAT WAS AMENDED AND RE-RECORDED FEBRUARY 15, 1995 BOOK 3, PAGE 1215-B AND FURTHER CORRECTED AND RE-RECORDED ON JULY 12, 1995 BOOK 3, PAGE 1279-B OFFICE OF THE COUNTY CLERK, SANDOVAL COUNTY, NEW MEXICO.

for a good and valuable consideration paid to the undersigned, the receipt and sufficiency of which is hereby acknowledged, has TRANSFERRED and ASSIGNED, GRANTED and CONVEYED and by these presents TRANSFERS, ASSIGNS, GRANTS and CONVEYS unto CHASE MANHATTAN MORTGAGE CORPORATION ~~200 OLD WILSON BRIDGE ROAD, WORTHINGTON, OH 43085~~ 1500 North 19th Street Monroe, La 71201 the above described note, together with all liens, and any superior title, held by the undersigned securing the payment thereof.

EXECUTED this 28th day of March, A.D. 19 97

HOME TRUST COMPANY
BY: _[signature]_
DEBORAH A. OLIVER
ASSISTANT SECRETARY

THE STATE OF NEW MEXICO
COUNTY OF BERNALILLO

Acknowledged before me on March 28th, 1997, by DEBORAH A. OLIVER
ASSISTANT SECRETARY HOME TRUST COMPANY
on behalf of said corporation.

_[signature]_
NOTARY PUBLIC, STATE OF NEW MEXICO
exp 10/01/00

assignNM

STATE OF NEW MEXICO } SS
COUNTY OF SANDOVAL }
This instrument was filed for record at 2:15 A.M./P.M. on
JUN 30 1997
Recorded in Vol. 4CA
of records of said county, folio 45842
By: _[signature]_ Clk. & Recorder Deputy

45842

**EXHIBIT "C"**